UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

K.D.H. (XXX-XX-6886)                                CIVIL ACTION NO. 09-CV-0679

VERSUS

U.S. COMMISSIONER SOCIAL                   MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION


**MEMORANDUM RULING**

**Introduction**

Plaintiff was born in 1965, has a high school education, and past work experience as a personnel clerk, cable installer, and airport ticket agent. He applied for disability benefits. ALJ Leslie John Rodriguez held a hearing and issued a decision. He found that Plaintiff had the following severe impairments: obesity, hypertension, coronary artery disease, and diabetes mellitus. He also found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work. A vocational expert testified that a person with Plaintiff's RFC and other vocational factors could perform the demands of his past work as a ticket clerk and personnel clerk. The ALJ accepted that testimony and found at step four of the five-step sequential analysis that Plaintiff was not disabled.

The Appeals Council denied a request for review. Plaintiff filed this civil action seeking judicial review. Pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the action was referred to the undersigned for decision

and entry of judgment. For the reasons that follow, the Commissioner's decision will be reversed, and the case will be remanded for further proceedings.

**Issues on Appeal**

Plaintiff lists four errors on appeal: (1) the ALJ did not give appropriate weight to a disability decision by the Veteran's Administration ("VA"); (2) there is not substantial evidence to support the ALJ's finding that Dr. Carter Boyd did not examine or treat Plaintiff; (3) there is not substantial evidence to support the conclusion that Plaintiff can perform the full range of sedentary work; and (4) there is not substantial evidence to support the finding that Plaintiff can perform his past relevant work.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**VA Decision**

The ALJ wrote that he was aware that the VA had estimated that Plaintiff had a 10% disability rating for intervertebral disc syndrome and for hypertensive vascular disease and a 60% rating for coronary artery disease and 0% for a knee condition. The ALJ noted that a decision by another government agency that a person is disabled is made based on that agency's rules rather than those employed by the Social Security Administration. Therefore, the ALJ wrote, the other agency's determination is not binding in the Social Security case. Tr. 25. See 20 C.F.R. § 404.1504.[1]

The ALJ is correct that the regulation states that a decision by another governmental agency is not binding. There is, however, jurisprudence from the Fifth Circuit Court of Appeals that requires some consideration of a VA rating of disability. The current law is summarized in the following passage from Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001):

> A VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ. See Loza v. Apfel, 219 F.3d 378, 394 (5th Cir.2000); Latham v. Shalala, 36 F.3d 482, 483 (5th Cir.1994); Rodriguez v. Schweiker, 640 F.2d 682, 686 (5th Cir.1981). In Rodriguez and its progeny, we have sometimes referred to a VA disability determination as being entitled to "great

---

[1] The regulation states: "A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us."

weight." While this is true in most cases, the relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case. Since the regulations for disability status differ between the SSA and the VA, ALJs need not give "great weight" to a VA disability determination if they adequately explain the valid reasons for not doing so.

In Chambliss, the ALJ considered a VA determination of permanent and total disability, but he gave it diminished weight because the VA determination was made only a year after heart surgery, it was conclusory and did not adequately explain why the claimant could not engage in light work activity, and a treating physician's opinion that supported the VA decision was discounted because it was given as part of a need-based application for food stamps. The Fifth Circuit affirmed, despite the ALJ not giving "great weight" to the VA disability determination, "[b]ecause the ALJ considered the VA disability determination and set forth valid reasons for giving the determination diminished weight." Chambliss, 269 F.3d at 523. See also Barraza v. Barnhart, 61 Fed. Appx. 917 (5th Cir. 2003) (ALJ declined to adopt a VA rating of total disability because he found it was based on vocational rather than medical factors) and Vaught v. Astrue, 271 Fed. Appx. 452 (5th Cir. 2008) ("ALJs need not give 'great weight' to a VA disability determination if they adequately explain the valid reasons for not doing so.").

Reversal and remand would be in order based on this issue if the VA had found Plaintiff to be totally disabled and the ALJ had summarily dismissed the finding as non-binding and not provided additional explanation for discounting the weight of the VA decision. But the VA did not find Plaintiff totally disabled, as was the issue in each of the

above-cited decisions. The Commissioner urges that the same amount of explanation is not required of the ALJ when there is a finding of less than total disability, and Plaintiff has not cited any precedent that would require the same amount of weight be afforded in a case such as this one. At least one case suggests the Commissioner may be correct. See Peel v. Astrue, 2009 WL 3028300, *7 (N.D. Fla. 2009) ("the ALJ likely did not err by failing to consider the individual percentages, considering that Plaintiff was never characterized [by the VA] as totally disabled").

The undersigned need not resolve the issue because any error stemming from a lack of further discussion of the VA rating is harmless in this case. There is no reason in the record to believe the VA finding suggests a greater degree of limitation than is reflected in the ALJ's RFC for mere sedentary work. The demands of sedentary work are not significant[2], and the VA found only a 10% disability rating for intervertebral disc syndrome and for hypertensive vascular disease and a 60% rating for coronary artery disease. There is no apparent reason that those assessments would preclude the performance of sedentary work,

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. A sedentary job involves sitting, but a certain amount of walking and standing is often necessary to carry out job duties. A job is sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a). Social Security Ruling 83-10 explains that a job involves walking and standing "occasionally" if those tasks generally total no more than about 2 hours of an 8-hour workday, with the other six or so hours spent sitting.

so it is not necessary to remand the case for the agency to engage in further analysis of the VA finding.

**Dr. Carter Boyd**

Dr. Carter Boyd offered a functional capacity evaluation form that conflicts with the RFC assessed by the ALJ, particularly with regard to Plaintiff's standing/walking abilities. Plaintiff complains that the ALJ wrongfully discounted the assessment based on an incorrect finding that there was no evidence that Boyd ever examined Plaintiff. This issue requires a review of the evidence related to Plaintiff's standing/walking abilities and his relationship with Dr. Boyd.

Plaintiff testified that he had a heart attack and left his job with the postal service. He returned to work in November of 2006 but, even on light duty, could not handle the job and left again in January 2007. Plaintiff testified that he also suffers with diabetes, and his back hurts all the time. He said that he sometimes tries to "walk as much as I can," meaning about 15 minutes, before his legs cramp up and he has to stop. He estimated he could not stand but about 15 or 20 minutes at a time, and could sit for about 30 minutes. Plaintiff said he had problems with his right knee so that he could not bend down or squat.

Plaintiff testified that, despite his problems, he tries to get out of the house every day, even if it is just walking around the block. He sometimes shops with his wife and is able to drive. He tries to go fishing for short periods with one of his sons, and he will toss a basketball back to his son after a shot.

Plaintiff testified that the doctors he sees most frequently are Dr. Boyd and Dr. Keller. Counsel stated on the record that most of Plaintiff's cardiovascular treatment has been at Willis-Knighton Hospital, and Dr. Boyd was involved. Plaintiff's routine medical care, however, is usually performed by Dr. Keller at the VA Hospital. Plaintiff testified that Dr. Boyd put him on medication, and Boyd wanted Plaintiff to do cardiac rehabilitation, but Plaintiff's insurance ran out. Tr. 404-05. A case development sheet also includes a reference to Dr. Carter Boyd performing a stress test in 2005 and lists Boyd as treating Plaintiff from August 1, 2004 "to present." Tr. 393.

Most of the medical records relate to Plaintiff's heart and diabetes problems. He did call a nurse in June 2006 to discuss low back pain and leg swelling after he drove for four hours the day before. Plaintiff had a surgery on his right knee in 1990, and he reported a car accident in April 2005 that exacerbated the knee pain. Medical records showed that his strength remained at 5/5, and he walked independently; his gait was antalgic but within normal limits. He was assessed with minimal degeneration of the knee and told about a home exercise program.

Plaintiff's original list of medications included only four. One was described as a blood thinner, and the others were to treat blood pressure and diabetes. An updated list was later filed that included 15 medications, all of which were blood thinners or for blood pressure, diabetes, angina, or other problems not associated with knee or back pain. Tr. 118-19.

Dr. Boyd issued a letter in which he stated that Plaintiff had been diagnosed with COPD, diabetes 2, hypertension, PVD (likely standing for peripheral vascular disease), ASVD (likely standing for arteriosclerotic vascular disease), and coronary artery disease. He did not describe any particular limitations caused by the diagnosed conditions. Tr. 351. He did complete an RFC assessment form in which he indicated that Plaintiff could sit for only 15 minutes at a time without needing to change positions, sit only two hours total in an eight-hour workday, and stand/walk for only five minutes at a time for a total of just one hour in a workday. The form asked the physician to indicate what caused the limitations. Dr. Boyd circled all of the pre-printed examples: pain, weakness, fatigue, and shortness of breath. It appears he also wrote in the available space "CP," which is perhaps a reference to a cardiopulmonary condition. Tr. 352.

The ALJ noted the letter and assessment form and observed that he "could find no evidence where Dr. Boyd had ever examined the claimant." Thus, he found that Dr. Boyd "has not established a treating relationship" and, furthermore, "there was no objective evidence the claimant could not sit six hours, and stand/walk two hours as would be required by sedentary work." The ALJ continued with the observation that there was no evidence of a pulmonary impairment or residuals, and there were no upper extremity limitations to support Dr. Boyd's indication, also on the form, that Plaintiff would be limited in the ability to perform simple grasping and fine manipulation. Ultimately, the ALJ found that the

severity of the limitations indicated by Dr. Boyd were simply not borne out by the record. Tr. 25-26.

Ordinarily, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status." Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir.1990). When good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony. The good cause exceptions that have been recognized include statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. Scott, 770 F.2d at 485. In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Id. See Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994).

Plaintiff argues that the ALJ was wrong to not afford Dr. Boyd's findings on the assessment form the great weight often afforded the opinion of a treating physician. The ALJ stated that he could find no evidence Dr. Boyd ever examined Plaintiff, but there was discussion of treatment at the hearing, and the case development sheet gave notice to the agency of the treatment history. It is not known why neither the agency nor Plaintiff ensured that those treatment records were made a part of the agency record. In any event, the court

finds adequate evidence to indicate that Dr. Boyd did have an examining and likely a treating relationship with Plaintiff.

Despite the apparent mistake about the lack of an examining relationship, the ALJ did give other reasons that were adequate to establish good cause and support a reduced weight being afforded Dr. Boyd's findings. The letter merely listed diagnoses, and the assessment form was brief and conclusory, as well as not well supported by other medical evidence of record. There was little evidence of degenerative disc disease or other impairment to support the rather extraordinary degree of sitting and standing limitations assessed by Dr. Boyd. Persons with such extreme limitations ordinarily have an extensive medical history that documents a serious back, leg, or other medical condition that causes the limitations. Plaintiff has some problem with his knee, but the medical evidence does not support his testimony about the extent of that problem. The ALJ articulated good cause, apart from the lack of examining relationship, to discount Dr. Boyd's findings about the extent of Plaintiff's limitations.

There was, however, some evidence that Plaintiff had back and hip pain that could limit his ability to sit and stand. Dr. Keller, the treating physician at the VA, wrote a letter in which he stated that Plaintiff had been diagnosed with various medical conditions, including "Traumatic Arthritis of the back and hip secondary to an on-the-job injury." Dr. Keller added that the "back and hip pain inhibits his ability to function as a postal worker." Tr. 358. It does not appear Dr. Keller completed a functional capacity assessment

form or otherwise indicated the particular extent of the back and hip related limitations. The ALJ considered the opinion of Dr. Keller. He observed that it was a combination of impairments and not hip or back pain that prevented Plaintiff from performing his postal worker job. He also wrote that there was no objective evidence Plaintiff had degenerative disc disease of the spine or hip impairment, and this was the first mention in the record of a hip problem. The ALJ said this opinion was "weighed more heavily as a physician with long standing treatment relationship," but he observed that the letter did not state Plaintiff was disabled. Of course, any time a physician states that a claimant is disabled the ALJ correctly dismisses the statement as being on an issue reserved to the Commissioner. The agency should, to be consistent, not condemn a physician's opinion if it does not include a legal conclusion that the claimant is disabled.

A medical report should include the medical source's statement about what the claimant can still do despite her impairment. 20 C.F.R. § 404.1513(b)(6). Dr. Boyd provided such a statement that was in conflict with the assessed RFC. The ALJ pointed to valid reasons to discount that opinion, but it is nonetheless present in the record and entitled to some consideration. Plaintiff's testimony, although judged less than credible, is also inconsistent with an ability to perform sedentary work. The report from Dr. Keller makes a conclusory statement that Plaintiff has back and hip problems that prevented him from doing his former job and presumably continue to impose some limitations.

The missing element, despite the ALJ's reasonable assessment of the evidence that was presented, is positive evidence from a medical source that Plaintiff can perform the demands of sedentary work. There is evidence, though discounted, that Plaintiff has back, hip, and knee problems that could cause difficulties with sitting and standing and have been assessed by one physician to impose limitations that would preclude the full range of sedentary work. The Fifth Circuit has held in similar cases that the absence of a medical opinion or evidence establishing that the claimant could perform the requisite exertional demands means the ALJ's determination is not supported by substantial evidence. See Ripley v. Chater, 67 F.3d 552, 557-58 (5th Cir. 1995). In a recent case, Williams v. Astrue, 355 Fed. Appx. 828 (5th Cir. 2009), the ALJ gave good reasons to decline to give controlling weight to the opinions of treating physicians and found that the claimant could perform light work. The Court, citing Ripley, found that the ALJ had improperly relied on his own medical opinions as to the limitations presented by the medical history presented in the other records. This case is similar. The absence of evidence from an accepted medical source regarding Plaintiff's exertional abilities deprives the Commissioner's decision of substantial evidence.

Accordingly, a judgment will be entered reversing and remanding the Commissioner's decision.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 3rd day of August, 2010.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE